51 CCPA
**Application of Robert Marshall STEW-ART and Emory P. Boynton.**

**Patent Appeal No. 7199.**

United States Court of Customs and Patent Appeals.

June 25, 1964.

Mason, Kolehmainen, Rathburn & Wyss, Chicago, Ill., Boris Haskell, Alfred B. Levine, Washington, D. C., Warren D. McPhee, Chicago, Ill. (Nicholas M. Esser, Chicago, Ill., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 11, 16 and 18 of application serial No. 834,472, filed August 18, 1959, for "Continuous Diffusion Process."

The invention relates to a process for extracting sugar from sugar cane by continuous diffusion wherein slices of cane are contacted with hot water in a countercurrent liquid-solid extraction (leaching) process. The sole issue is whether appellants' claims define the invention in compliance with 35 U.S.C. § 112, second paragraph.[1]

By way of background, the instant application is a continuation of an application filed in 1958 which in turn is a continuation-in-part of an application filed in 1955. After the examiner had allowed ten claims in the 1958 application, a patent to Bruniche-Olsen issued, No. 2,885,-311 of May 5, 1959. Desiring to provoke an interference therewith, appellants copied one claim therefrom (patent claim 3) as claim 11 in the instant application. Claims 16 and 18, though not copied

---

1. The claims are also rejected on art, which rejection, for reasons hereinafter apparent, we find unnecessary to discuss.

from the Bruniche-Olsen patent, are similar to claim 11 which reads:

"11. A continuous diffusion process, comprising a single treatment stage inclined to the horizontal and subject to continuous feed of liquid at one end, continuous feed of *divided solids* at its opposite end, and continuous discharge of spent pulp and enriched liquid at the respective ends of said stage opposite the points of their introduction, moving the solids upwardly along the inclination in a linear movement at a substantially uniform rate throughout the depth of the liquid body in a movement initiated by a succession of mechanical movements separately applied against any given portion of the solids with only a limited interval between such applications during which the movement of said solids continues from displacement of following solids responding to such mechanical movement, moving the liquid downwardly along the inclination in a gravity flow countercurrent to the solids movement, imparting a rotational component of movement to said solids in said linear movement, and interrupting the rotation of said solids at intervals along the course of solids movement so as to distribute the solids uniformly throughout the liquid." [Emphasis ours.]

Claims 16 and 18 differ from claim 11 in several respects, the most relevant to this appeal being that claim 16 recites "sucrose-containing solids" rather than "solids" broadly, while claim 18 recites "sugar cane solids."

Since the issue is whether the above claims comply with 35 U.S.C. § 112, second paragraph, i. e., whether they "particularly point out and distinctly claim" the invention, we shall first consider appellants' disclosure to determine what it is appellants have invented.

Appellants' specification says previously known methods of extracting sugar from cane in which the cane is crushed and pressed are unsatisfactory since by crushing and pressing "substantial amounts of undesirable materials are expressed from the cane, along with the juice, and these remain in the juice as undesirable impurities." Further, it is pointed out that in extraction of sugar by diffusion rather than crushing and pressing, the cell walls of the cane are left intact, acting as semi-permeable membranes through which sugar may pass and "undesirable materials commonly found in raw cane juice are left in the cells to a considerable degree * * *."

Diffusion extraction of sugar from cane is not new. The specification cites a 1951 journal article which describes *batch* methods of diffusion extraction but says no *continuous* method is feasible. The specification notes also that sugar *beets* are susceptible to continuous diffusion extraction since they form a "slippery, self-lubricating mass when admixed with water" which is easily moved through a countercurrent flow system whereas cane, due to its physical shape and properties, is not so susceptible.

The essence of appellants' invention as described is finding a way to prepare cane stalks so that upon contact with water in countercurrent flow, high diffusion of sugar results while cane pulp is easily moved through the system. The specification says (emphasis ours):

"* * * sugar cane as it comes from the field is supplied to a cane slicing means * * * which cuts or chops the stalks of cane *transversely into uniform slices.* * * *

* * * * * *

"For optimum operation of the process, it is desirable that the sugar cane * * * disks or slices * * * [have] a diameter essentially equal to that of the diameter of the sugar cane stalk. For practical purposes thicknesses of less than about ½ inch 13 millimeters) are required. Preferably sugar cane disks ⅛ inch (3 millimeters) to ⅜ inch (9 millimeters) in thickness are used. The slices into which the cane is cut or divided are essentially *disk-shaped* because the cutting is done sub-

stantially transversely to the axis of the stalk. \* \* \* *The important factor is not so much the shape or configuration of the pieces of sugar cane, but the range of dimensions substantially parallel to the stalk axis is critical.* It is necessary that the slices be not too thick, otherwise they resist both diffusion and transfer in suspension in water or sugar juice, and not too finely divided, otherwise the purity of the resulting diffusion juice is adversely affected and the material may pack into an immovable mass."

The specification further says continuous diffusion may be effected in "any apparatus capable of continuously transporting a suspension of cane slices countercurrent to a diffusion medium," one suggested apparatus being that described in patent 2,950,998 of Stewart and Boynton, the instant appellants.

The examiner allowed ten claims, all directed to the method of extracting sugar cane juice from sugar cane, in which claims at least cane slice dimensions and sugar juice concentrations are specifically defined. In some claims, temperatures and liquid-solid contact times are also recited.

The examiner rejected claims 11, 16 and 18 as "failing to properly define the invention." The board construed the rejection as "based on the ground that the appealed claims are broader than the disclosure." We take this rejection to be grounded on failure to comply with 35 U.S.C. § 112, second paragraph.

The board said (emphasis ours):

"The stated position of the Examiner is that appellants have made the size of the cane slices and the density of the sugar juice critical and essential features of their process. The Examiner considers claims which do not recite these critical limitations to be directed to a broader invention which does not have proper basis in appellants' disclosure. \* \* \*

\* \* \* \* \* \*

"The description of the invention in the specification, including the conditions disclosed as being critical, may properly be assumed to set forth the best mode contemplated by the inventors of carrying out their invention. No basis is seen for now ignoring conditions previously stated to be critical.

"*The disclosure shows no conception by appellants of treating any material other than sugar cane, and in the treatment of cane the disclosure states that certain dimensions of the cane slices are critical.* The record \* \* \* further indicate[s] that the density (Brix) of the juice is also a critical factor. Claims 11 and 16 are not even limited to treating sugar cane. All of the appealed claims omit the said critical factors of solids dimensions and Brix of the liquid. We agree with the Examiner that these claims are broader than the disclosure \* \*."

The board further said:

"Claim 11 stands rejected as lacking proper antecedent basis for the terminology 'inclined to the horizontal.' Appellants do not point out wherein there is antecedent basis in the instant specification for this language. \* \* \* We are unable to adopt appellants' view that any apparatus, including a vertical one, which is not actually horizontal may properly be described as 'inclined to the horizontal.' \* \* \*

"Claim 18 stands rejected as too broad in the expression 'disposed at such an angle to the horizontal that the continuous feed of solids is against gravity.' We will sustain this rejection. The quoted language would cover the use of a diffusion apparatus having its axis positioned at considerably less than 90° to the horizontal. As pointed out in the preceding paragraph, we are of the opinion that appellants do not have basis for such an arrangement."

Appellants argue that by this appeal they "assert their right to claim the sub-

ject matter comprehended by claim 3 [claim 11 herein] of the Bruniche-Olsen et al. * * * [patent]"; that "for highly technical reasons the Patent Office has stubbornly resisted any effort of appellants to claim the common subject matter"; that the "procedure disclosed by appellants would infringe claim 3 of Bruniche-Olsen et al. [which] * * * is an important factor in considering whether or not the invention of claim 11 * * * is disclosed in appellants' application"; that the Patent Office position that "because appellants have given detailed description of the preferred apparatus, materials preparation and operational steps to carry out the diffusion process, they are not entitled to generic patent claims on this process" is in error; and that their disclosure "is certainly as good as that of Bruniche-Olsen et al. and clearly is adequate to support the claim copied from Bruniche-Olsen et al."

We first point out that this is not an interference, we are not determining priority or right to make counts, and accordingly we are in no way concerned with the *disclosure* of the Bruniche-Olsen patent. Nor is it material that claim 3 of Bruniche-Olsen (claim 11 herein) may dominate appellants' invention. We are here concerned only with whether claims 11, 16 and 18 "particularly point out and distinctly claim" the invention which is disclosed in appellants' specification.

Notwithstanding appellants' arguments, we find no reversible error in the board's decision. Our review of appellants' specification makes it clear that the gist of the invention is finding a way to adapt *continuous* diffusion extraction to removing sugar from sugar *cane*. Appellants admit that *batch* diffusion of cane is old, as is *continuous* diffusion of sugar *beets*. While we agree with appellants that "the disclosure is not limited to specified sizes of sugar cane pieces or specified densities of the diffusion liquid," it cannot be gainsaid that the disclosed process deals *only* with sugar *cane* and more specifically a particular way to prepare cane for adaptation to *continuous* diffusion. Claims 11 and 16 define processes not even limited to sugar *cane*. We do not see how such claims point out *the invention* within the meaning of 35 U.S.C. § 112.

As to claim 18, which defines the material to be treated as "divided sugar cane solids," we are not convinced such claim particularly points out the invention as required by the statute since appellants' specification unequivocally says, "The important factor is not so much the shape or configuration of the pieces of sugar cane, but the range of *dimensions substantially parallel to the stalk axis is critical.*" (Emphasis ours.) Claim 18 fails to make any mention of this critical aspect of the disclosed invention.

Finding the above ground of rejection to be well taken, we find it unnecessary to consider the other reasons for rejecting the claims relied on by the Patent Office.

The decision of the board is affirmed.

Affirmed.